**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIERRA CLUB )<br>5 Second Street, 2nd Floor )<br>San Francisco, CA 94105; and )<br>   )<br>CALIFORNIA COMMUNITIES )<br>AGAINST TOXICS )<br>P.O. Box 845 )<br>Rosamond, CA 93560, )<br>   )<br>          Plaintiffs,  )<br>   )<br>   v.   )<br>   )<br>GINA McCARTHY, Administrator, )<br>United States Environmental Protection )<br>Agency, in her official capacity, )<br>1200 Pennsylvania Ave, NW )<br>Washington, D.C. 20004, )<br>   )<br>          Defendant.   )<br>   ) | Case No. _____<br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

## INTRODUCTION

This is an action for declaratory judgment and injunctive relief to compel Defendant Gina McCarthy, Administrator of the United States Environmental Protection Agency ("EPA"), to take actions required by § 112(d)(6) and § 112(f)(2) of the Clean Air Act. 42 U.S.C. § 7412(d)(6), 7412(f)(2). The Clean Air Act ("CAA" or "the Act") requires the Administrator to "review, and revise as necessary (taking into account developments in practices, processes, and control technologies)," the emission standards for hazardous air pollutants promulgated under § 112(d) no later than eight years after such standards are initially promulgated. *Id.* § 7412(d)(6). In addition, eight years after promulgating § 112(d) standards, the Administrator either must promulgate additional "residual risk" standards under § 112(f)(2), due to the risk remaining after

the application of the § 112(d) standards, or must determine that residual risk standards are not required to protect human health or the environment. *Id.* § 7412(f)(2). Yet the Administrator has not taken the actions required by § 112(d)(6) and § 112(f)(2) for publicly owned treatment works ("POTWs"), a major source category of hazardous air pollutants, 64 Fed. Reg. 57,572 (Oct. 26, 1999) (codified at 40 C.F.R. Part 63, Subpart VVV ("Subpart VVV")). Consequently, Plaintiffs Sierra Club and California Communities Against Toxics (collectively, "Plaintiffs") seek both a determination that the Administrator's failure to perform each action required by § 112(d)(6) and § 112(f)(2) violates the CAA, and an order to compel the Administrator to take each required action in accordance with an expeditious deadline set by this Court.

## JURISDICTION AND VENUE

1. This action arises under § 112(d)(6) and § 112(f)(2) of the CAA. 42 U.S.C. § 7412(d)(6), 7412(f)(2). This Court has jurisdiction over this action pursuant to § 304(a)(2) of the CAA, 42 U.S.C. § 7604(a)(2), and 28 U.S.C. § 1331. This Court may order the Administrator to perform the requisite acts and duties, may issue a declaratory judgment, and may grant further relief pursuant to § 304(a), 42 U.S.C. § 7604(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Plaintiffs have a right to bring this action pursuant to § 304(a)(2) of the CAA, 42 U.S.C. § 7604(a)(2), and the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

2. By certified letter to the Administrator posted on August 23, 2013, Plaintiffs gave notice of this action as required by § 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. Part 54.

3. Venue is vested in this Court under 28 U.S.C. § 1391(e) because the Defendant, EPA Administrator Gina McCarthy, resides in this district.

## PARTIES

4. Plaintiff Sierra Club is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in San Francisco, California. A national organization dedicated to the protection of public health and the environment, including clean air, Sierra Club has more than 598,000 members who reside in all 50 states and the District of Columbia.

5. Plaintiff California Communities Against Toxics ("CCAT") is a nonprofit organization existing under the laws of the State of California, and is headquartered in Rosamond, California. California Communities Against Toxics brings this action on behalf of itself and its adversely affected members. California Communities Against Toxics advocates for environmental justice and protection from toxic air pollution in the State of California and nationally.

6. Defendant Gina McCarthy is the Administrator of the EPA ("the Administrator" or "Defendant"). In that role she is charged with the duty to uphold the CAA and to take required regulatory actions according to the schedules established therein.

## LEGAL FRAMEWORK

7. The Clean Air Act has the purpose "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

8. A "primary goal" of the CAA is "pollution prevention." 42 U.S.C. § 7401(c). Congress found the CAA to be necessary in part because "the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and

welfare, including injury to agricultural crops and livestock, damage to and the deterioration of property, and hazards to air and ground transportation." *Id.* § 7401(a)(2).

9. To accomplish these objectives, the CAA prescribes a regulatory framework within which EPA is required to set technology and risk-based standards by specific deadlines to reduce emissions of hazardous air pollutants[1] ("HAPs") and resulting harm to health and the environment.

10. In the 1990 Clean Air Act Amendments, Congress established new requirements for EPA to control toxic air pollution under § 112 of the Clean Air Act. *Id.* § 7412. By statute, Congress listed 189 HAPs for regulation. *Id.* § 7412(b)(1); *see also id.* § 7412(a)(6).

11. The Act requires EPA to list categories of major sources of these air pollutants. *Id.* § 7412(c)(1). A "major source" is defined as "any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants." *Id.* § 7412(a)(1).

12. EPA must then promulgate emission standards for each listed category or subcategory of major sources of HAPs, pursuant to § 112(d)(2)–(3). *Id.* § 7412(d)(1)–(3). These standards under § 112(d) are often referred to as "maximum achievable control technology" or "MACT" standards.

13. Once the Administrator has promulgated emission standards pursuant to § 112(d) for a source category, § 112(d)(6) then requires that "the Administrator shall review, and revise as necessary (taking into account developments in practices, processes, and control

---

[1] The term "hazardous air pollutant" is defined as "any air pollutant listed pursuant to [§ 112(b)]." 42 U.S.C. § 7412(a)(6) (citing § 7412(b)).

4

technologies), emission standards promulgated under this section no less often than every 8 years." *Id.* § 7412(d)(6). This provision requires the Administrator to either revise the existing § 112(d) standards or to issue a final determination not to revise them based upon a published finding that revision is not "necessary" to ensure the emission standards satisfy § 112(d) of the Act. *Id.*

14. Section 112(f) of the Act further requires action "to protect health and environment." *Id.* § 7412(f). It mandates that EPA first submit a report to Congress regarding residual risk or "the risk to public health remaining, or likely to remain" after the application of § 112(d) standards. *Id.* § 7412(f)(1). In 1999, EPA submitted a report to Congress pursuant to § 112(f)(1), *id. See* EPA, EPA-453/R-99-001, *Residual Risk Report to Congress* (Mar. 1999), *available at* http://www.epa.gov/ttncaaa1/t3/reports/risk_rep.pdf. Congress did not act on any recommendation in that report.

15. Congressional inaction triggered the duty of the Administrator to determine whether to promulgate residual risk standards under § 112(f)(2) for those source categories for which EPA had promulgated § 112(d) standards. 42 U.S.C. § 7412(f)(2). Section 112(f)(2) directs that:

> (A) If Congress does not act on any recommendation submitted under paragraph (1), the Administrator shall, within 8 years after promulgation of standards for each category or subcategory of sources pursuant to [§ 112(d)], promulgate standards for such category or subcategory if promulgation of such standards is required in order to provide an ample margin of safety to protect public health in accordance with this section … or to prevent, taking into consideration costs, energy, safety, and other relevant factors, an adverse environmental effect. Emission standards promulgated under this subsection shall provide an ample margin of safety to protect public health in accordance with this section (as in effect before November 15, 1990) …. If standards promulgated pursuant to [§ 112(d)] and applicable to a category or subcategory of sources emitting a pollutant (or pollutants) classified as a

5

> known, probable or possible human carcinogen do not reduce lifetime excess cancer risks to the individual most exposed to emissions from a source in the category or subcategory to less than one in one million, the Administrator shall promulgate standards under this subsection for such source category.
>
> …
>
> (C)   The Administrator shall determine whether or not to promulgate such standards and, if the Administrator decides to promulgate such standards, shall promulgate the standards 8 years after promulgation of the [§ 112(d) standards] for each source category or subcategory concerned.

*Id.* Thus, if residual risk standards are "required in order to provide an ample margin of safety to protect public health" or "to prevent … an adverse environmental effect," then the Administrator is directed to promulgate these standards within eight years of the § 112(d) standards. *Id.* Under § 112(f)(2), EPA is therefore required either to set new standards that will protect the public with an ample margin of safety or to determine that such standards are not necessary.

16.   The Act applies § 307(d) rulemaking requirements to "the promulgation or revision of any … emission standard or limitation under section 7412(d) of this title" and "any standard under section 7412(f) of this title," among others. *Id.* § 7607(d)(1)(C).

17.   Thus, to fulfill its § 112(d)(6) and § 112(f)(2) duties, EPA must provide public notice, consider public comments received, perform all other requirements described in CAA § 307(d), *id.* § 7607(d), and promulgate a final rule or determination.

18.   Section 112(d) and section 112(f) standards become effective "upon promulgation." *See id.* § 7412(d)(10), (f)(3); *see also id.* § 7412(f)(4) (setting compliance dates for § 112(f) standards); *id.* § 7412(i) (setting compliance schedule for § 112(d) standards).

## FACTUAL BACKGROUND

19. On October 26, 1999, EPA promulgated national emission standards for POTWs pursuant to § 112(d). Final Rule, National Emission Standards for Hazardous Air Pollutants: Publicly Owned Treatment Works, 64 Fed. Reg. 57,572 (Oct. 26, 1999) ("POTW NESHAP").

20. EPA defines "Publicly Owned Treatment Works" as:

> a treatment works, as that term is defined by section 112(e)(5) of the Clean Air Act, which is owned by a municipality (as defined by section 502(4) of the Clean Water Act), a State, an intermunicipal or interstate agency, or any department, agency, or instrumentality of the Federal Government. This definition includes any intercepting sewers, outfall sewers, sewage collection systems, pumping, power, and other equipment. The wastewater treated by these facilities is generated by industrial, commercial, and domestic sources. As used in this regulation, the term POTW refers to both any publicly owned treatment works which is owned by a State, municipality, or intermunicipal or interstate agency and therefore eligible to receive grant assistance under the Subchapter II of the Clean Water Act, and any federally owned treatment works as that term is described in section 3023 of the Solid Waste Disposal Act.

40 C.F.R. § 63.1595.

21. Primary HAPs emitted from POTWs include xylenes, methylene chloride, toluene, ethyl benzene, chloroform, tetrachloroethylene, benzene, and naphthalene. POTW NESHAP, 64 Fed. Reg. at 57,572. These HAPs can cause adverse health effects, including damage to the cardiovascular, respiratory, and central nervous systems, cataracts, retinal hemorrhage, and several forms of cancer, including liver, kidney, non-Hodgkin lymphoma, multiple myeloma, and leukemia. *See* EPA, Technology Transfer Network – Air Toxics Web Site (Aug. 8, 2013), http://www.epa.gov/ttnatw01/ (containing health information on the aforementioned chemical compounds).

22. Several of these HAPs, including toluene, benzene, chloroform, and some xylenes, are volatile organic compounds ("VOCs"). *See id.* (containing information on the aforementioned chemical compounds). When VOCs react with nitrogen oxides in the atmosphere, they produce ground-level ozone, or smog. *See* EPA, Ground-Level Ozone: Basic Information (Nov. 1, 2012), http://www.epa.gov/air/ozonepollution/basic.html. Ground-level ozone is hazardous to both human health and the health of vegetation and ecosystems. *Id.* Ozone is harmful to the respiratory system in humans, *see id.* (stating that people with asthma and lung disease are more susceptible to harm), and is particularly harmful to plants during the growing season, *id.*

23. Another HAP POTWs can emit is polychlorinated biphenyls ("PCBs"). *See* G. J. Mayer, *et al.*, *Emissions of Air Toxics from Wastewater Treatment Plants*, 66 Water Env't Res. 140, 142 tbl.3 (1994) (listing various chemical compounds released by four POTWs, including PCBs); *see also* Proposed Rule, National Emission Standards for Hazardous Air Pollutants: Publicly Owned Treatment Works, 63 Fed. Reg. 66,084, 66,099 tbl.1 (Dec. 1, 1998) (listing PCBs as a "Hazardous Air Pollutant of Concern for Subpart VVV"); 42 U.S.C. § 7412(b)(1) (listing PCBs as a HAP). PCBs are toxics that persist in the environment and bioaccumulate up the food chain. *See* EPA, Polychlorinated Biphenyls (PCBs) (Apr. 18, 2011), http://www.epa.gov/pbt/pubs/pcbs.htm; EPA, About PBTs (Apr. 18, 2011), http://www.epa.gov/pbt/pubs/aboutpbt.htm. PCBs released into the air settle on land and in the water. EPA, Polychlorinated Biphenyls (PCBs), *supra*. They do not break down in the environment. *Id.* When PCBs settle in water, they bioaccumulate in fish that are then consumed by humans. *Id.* PCBs cause liver, stomach, and kidney damage and are probable carcinogens. *Id.*

24. The Administrator was required to review and revise – or determine that revision was unnecessary – Subpart VVV by Oct. 26, 2007. *See* 42 U.S.C. § 7412(d)(6). This deadline has expired, but the Administrator has not reviewed, revised, or determined not to revise Subpart VVV. Similarly, by October 26, 2007, the CAA required the Administrator to promulgate residual risk standards or determine that they are not required for sources regulated by Subpart VVV. *Id.* § 7412(f)(2)(A), (C). This deadline has expired, but the Administrator has neither promulgated nor determined not to promulgate residual risk standards for these sources.

## SPECIFIC ALLEGATIONS

25. The Administrator was required to take final action to fulfill her duties under § 112(f)(2), 42 U.S.C. § 7412(f)(2), and § 112(d)(6), *id.* § 7412(d)(6), for POTWs subject to Subpart VVV by October 26, 2007, *i.e.*, "within 8 years after promulgation" of Subpart VVV and "no less often than every 8 years."

26. The Administrator has not completed a review of the risk to public health and the environment for POTWs subject to Subpart VVV.

27. The Administrator has not promulgated a final rule or determination pursuant to § 112(f)(2) for POTWs subject to Subpart VVV.

28. The Administrator has not completed a review of Subpart VVV pursuant to § 112(d)(6).

29. The Administrator has not promulgated a final rule or determination pursuant to § 112(d)(6) for POTWs subject to Subpart VVV.

30. The Administrator has an ongoing, unmet, nondiscretionary duty to complete a review of the current risk to public health and the environment and promulgate either a § 112(f)(2) final rule or determination for POTWs subject to Subpart VVV.

31. The Administrator has an ongoing, unmet, nondiscretionary duty to complete a review of Subpart VVV and promulgate either a revised § 112(d) final rule or § 112(d)(6) determination for POTWs subject to Subpart VVV.

32. Each day the Administrator fails to take these legally required actions, EPA commits new, additional, and ongoing violations of its duties under § 112(f)(2) and § 112(d)(6) of the CAA, 42 U.S.C. § 7412(f)(2), (d)(6).

33. The Administrator has thereby failed to perform nondiscretionary acts and duties within the meaning of § 304(a)(2), 42 U.S.C. § 7604(a)(2), for POTWs subject to Subpart VVV.

## ALLEGATIONS OF INJURY

34. Plaintiffs and their members have been and will continue to be harmed by the Administrator's failure to take the actions required by § 112(d)(6) and § 112(f)(2), 42 U.S.C. § 7412(d)(6), (f)(2), for POTWs.

35. Plaintiffs work to protect the health and environmental interests of their members and the public through education, citizen organizing, and advocacy, including before EPA and other federal agencies.

36. Plaintiffs' members live, work, travel, and recreate near POTWs. Their members include active outdoor recreation enthusiasts and researchers who engage in a wide variety of activities including, but not limited to, birdwatching and other wildlife observation and study, gardening, flower and plant identification and study, edible wild plant gathering, boating, swimming, fishing, and camping. Members also enjoy using their backyards, stoops, gardens, parks, playgrounds, and nature preserves, and walking or riding bicycles along their neighborhood streets.

37. Plaintiffs' members suffer harm to their health and environmental interests due to exposure to the HAPs emitted by POTWs. As a result of their activity, work, recreational, and residential locations, Plaintiffs' members breathe the pollutants emitted by sources located near them and have an interest in reducing the emission of HAPs from POTWs. Plaintiffs' members are also exposed to HAPs through eating fish that have been affected by PCB bioaccumulation. The health effects of exposure to pollutants emitted by POTWs can include damage to the cardiovascular, respiratory, and central nervous systems, cataracts, retinal hemorrhage, liver damage, and several forms of cancer, including liver, kidney, non-Hodgkin lymphoma, multiple myeloma, and leukemia.

38. Plaintiffs' members also suffer harm to their recreational, aesthetic, educational, and professional interests due to the exposure of surrounding wildlife, plants, waters, land, and local communities to HAPs emitted by POTWs. Even where they experience no health effects, they can smell, see, sense, or be otherwise aware that HAPs are present in the locations where they live, work, recreate, or engage in outdoor activities such as wildlife observation and study, gardening, flower and plant identification and study, edible wild plant gathering, boating, swimming, and fishing; using their yards, stoops, or porches; recreating in local parks, playgrounds or nature preserves; or walking or riding bicycles along their neighborhood streets. These reasonable concerns diminish their enjoyment of activities and outdoor areas they previously enjoyed.

39. Further, POTWs emit HAPs that damage surrounding wildlife, plants, water, land, and local communities, thus harming Plaintiffs' members' recreational, aesthetic, professional, and educational interests in observing, fishing, cultivating, studying, researching, or writing about those wildlife, plants, or their ecosystems. As detailed above, some of the HAPs POTWs

emit are VOCs, which contribute to smog that harms plant species and can result in changes in wildlife habitat. These changes can lead to wildlife avoidance of certain areas, as well as a reduction in biodiversity or other changes to a local community's ecosystem. Ecosystem changes make it more difficult for Plaintiffs' members to observe, fish, cultivate, study, research, or write about wildlife, plants or ecosystems.

40. Plaintiffs' members suffer additional harm because they do not have information, published findings, or determinations from the Administrator regarding the status of the existing emission standards, technological updates affecting those standards, the health and environmental risks that remain after application of those standards, or the need for residual risk standards for POTWs. This information would be provided as part of the Administrator's required actions pursuant to § 112(d)(6) and § 112(f)(2). *See, e.g.*, 42 U.S.C. § 7607(d)(3)–(6) (describing notice and informational disclosures required as part of rulemakings under § 112). If Plaintiffs and their members had this information, they would use it to advocate for stronger health and environmental protections, to raise public awareness, and to protect themselves and their families from HAPs and affected land, water, and food. This lack of information from EPA hampers the ability of Plaintiffs and their members to take certain actions to protect their health and communities, such as choosing safe locations for their homes, businesses, or children's schools, or advocating for protection from HAPs in order to advance their recreational, aesthetic, health, and other interests.

41. Plaintiffs and their members suffer harm because the Administrator has not issued a final determination regarding the status of the existing standards, technological updates affecting those standards, the health and environmental risks that remain after application of those standards, or the need for residual risk standards for POTWs. Any such determination

would be judicially reviewable. *See id.* § 7607(b), (d) (describing procedural rights granted to interested parties in § 112 rulemakings). Deprivation of the right of judicial review harms the ability of Plaintiffs and their members to protect their interests.

42.     The Administrator's failure to take actions required by § 112(d)(6) and § 112(f)(2) for POTWs causes Plaintiffs and their members to suffer the injuries alleged.

43.     Due to the Administrator's failure to promulgate revised emission standards under § 112(d)(6) and failure to promulgate residual risk standards under § 112(f)(2) for POTWs, Plaintiffs, their members, and the land, water, wildlife, and plants in their local communities are exposed to HAPs and suffer the harms described above due to this exposure. Plaintiffs' members also have a reasonable concern about suffering harms to their health, aesthetic, recreational, and other interests due to exposure to the HAPs emitted by POTWs. The Administrator deprives Plaintiffs' members of the reduced emissions that would result from revising the existing standards under § 112(d)(6) in account with current technology. Plaintiffs' members are further deprived of reduced emissions by the Administrator's failure to promulgate residual risk standards under § 112(f)(2) by providing an ample margin of safety or preventing an adverse environmental effect. Consequently, Defendant prolongs and increases Plaintiffs' members' exposure to HAPs and related adverse health, recreational, and aesthetic injuries as described above. Defendant also prolongs and increases the HAP exposure of land, water, wildlife, and plant resources in Plaintiffs' members' local communities, resulting in the harm to their various interests as described above. Emission reductions under § 112(d)(6) and § 112(f)(2) would reduce this exposure to HAPs, and would reduce the related health, environmental, recreational, aesthetic, and other harm suffered by the Plaintiffs and their members.

44. Moreover, by not reviewing the existing emission standards or issuing the statutorily required final determinations regarding the emission standards under § 112(d)(6) or regarding residual risk standards under § 112(f)(2), the Administrator deprives Plaintiffs and their members of information, published findings, and determinations regarding topics such as technology that may be available to control HAPs and the residual risk of cancer or other toxic effects due to HAP emissions from POTWs. *See, e.g.*, *id.* § 7607(d)(3)–(6). In addition, these failures deprive Plaintiffs and their members of the opportunity to receive judicial review of the lawfulness of final EPA actions regarding technology-based or residual risk standards. *See id.* § 7607(b). These failures make it more difficult for Plaintiffs and their members to advocate for health and environmental protection from HAPs, to shield themselves, their families, employees, and communities from exposure to such pollutants, and to protect their health, recreational, aesthetic, and other interests.

## CLAIMS FOR RELIEF

45. The allegations of all foregoing paragraphs are hereby incorporated as if set forth fully herein.

### Violation of § 112(d)(6) of the Clean Air Act:

46. The Administrator's ongoing failure to review and either revise or issue a revision determination regarding the emission standards for POTWs in accordance with § 112(d)(6), 42 U.S.C. § 7412(d)(6), constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of § 304(a)(2) of the CAA, 42 U.S.C. § 7604(a)(2), for POTWs.

**Violation of § 112(f)(2) of the Clean Air Act:**

47. The Administrator's ongoing failure either to promulgate § 112(f) residual risk standards or to issue a final determination not to promulgate such standards for POTWs, constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary," within the meaning of § 304(a)(2) of the CAA, 42 U.S.C. § 7604(a)(2), for POTWs.

### PRAYER FOR RELIEF

48. WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Declare that the Defendant Administrator's failure to review and either revise standards promulgated under § 112(d) or issue a final determination that such revision is not necessary for POTWs, pursuant to § 112(d)(6), 42 U.S.C. § 7412(d)(6), within eight years, constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of § 304(a)(2), 42 U.S.C. § 7604(a)(2).

(2) Order the Defendant Administrator to review and either revise the emission standards or issue a final determination that such revision is not necessary for POTWs, pursuant to § 112(d)(6), 42 U.S.C. § 7412(d)(6), in accordance with expeditious deadlines specified by this Court.

(3) Declare that the Defendant Administrator's failure either to promulgate § 112(f) standards or to issue a final determination that such standards are not required for POTWs, constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of § 304(a)(2), 42 U.S.C. § 7604(a)(2).

(4) Order the Defendant Administrator either to promulgate § 112(f) standards or to issue a final determination that such standards are not required for POTWs, pursuant to § 112(f)(2), 42 U.S.C. § 7412(f)(2), in accordance with expeditious deadlines specified by this Court;

(5) Retain jurisdiction to ensure compliance with this Court's decree;

(6) Award Plaintiffs the costs of this action, including attorney's fees; and,

(7) Grant such other relief as the Court deems just and proper.

DATED: October 24, 2013

Respectfully Submitted,

/s/James S. Pew
James S. Pew (D.C. Bar No. 448830)
Seth L. Johnson (D.C. Bar No. 1001654)[*]
Emma C. Cheuse (D.C. Bar No. 488201)
Earthjustice
1625 Massachusetts Ave. NW
Suite 702
Washington, DC 20036
Tel: (202) 667-4500
Fax: (202) 667-2356

*Counsel for Plaintiffs*

---

[*] Application for admission to the U.S. District Court for the District of Columbia is pending.